IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RALPH CALAME, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-441-NJR-DGW |
| | ) |
| AARON'S, INC., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This case is currently before the Court on Defendant's motion for summary judgment (Doc. 35). Pursuant to Title VII of the Civil Rights Act of 1964, Ralph Calame, Jr., ("Plaintiff") alleges that Aaron's, Inc. ("Defendant") discriminated against him based on his religion when he was terminated from his employment in March 2012. The Court has duly considered Defendant's motion and Plaintiff's response brief, and a hearing on the motion was held on July 7, 2014. For the following reasons, the motion for summary judgment is denied.

## Background

Plaintiff, Ralph Calame, Jr., began working for Aaron's, Inc., as a management trainee in August of 2011 (Doc. 42, p. 1). Defendant's business serves customers through the sale and lease ownership of residential furniture, consumer electronics, and

home appliances (Doc. 36, p. 3). Defendant has stores nationwide, including several in the St. Louis and southern Illinois regions (*Id*.). Each store is managed by a General Manager ("GM"), and each GM reports to a Regional Manager ("RM") (*Id*.).

Before his employment with Defendant, Plaintiff was a store manager and also a lead store manager for Rent-a-Center, a competitor of Aaron's. (Doc. 42, Ex. 1, ¶ 4-5). For some time, RM Brad Martins and RM Fred Baker of Aaron's attempted to recruit Plaintiff to leave Rent-a-Center and join them as a GM for Aaron's (*Id*. at ¶ 7). Plaintiff eventually accepted a position with Defendant as a customer account manager/management trainee at the Hazelwood, Missouri location on August 15, 2011 (Doc. 36, P. 4, ¶6). Hired on the "fast track", the expectation was for Plaintiff to become a GM, and if successful in that capacity, to become an Assistant Regional Manager (*Id*. at ¶ 7).

Plaintiff only briefly trained at the Hazelwood location before transferring to the Mayfair location in Florissant, Missouri (Doc. 36, p. 5-6, ¶8-9). Training at the Mayfair location only lasted two to three weeks before Plaintiff was again moved to the O'Fallon, Missouri, location to train with RM Brad Martins on a store audit (*Id*. at ¶9-10). RM Martins initially offered Plaintiff a GM position at the O'Fallon location, but Plaintiff turned it down due to the commute (*Id*. at ¶11). Plaintiff subsequently accepted a GM position at the Hazelwood location in October 24, 2011 (*Id*.). Plaintiff was the GM over the Hazelwood location until December 22, 2011, when he was again transferred, this time to the East Alton, Illinois, location due to a non-compete agreement with his

previous employer, Rent-a-Center (*Id*. at ¶15).

Initially, the East Alton location was regionally managed by RM Fred Baker, though his resignation was announced at the same time as Plaintiff's arrival (*Id*. at ¶16). RM Baker was replaced by RM Todd Gotshall (*Id*.). Management styles between RM Martin and RM Gotshall differed (*Id*. at ¶17). For instance, RM Gotshall required GM's to call whenever they were going to be late, leave early, or leave their store for any other reason but lunch (*Id*. at¶19). RM Martin had no such requirement (Doc. 36, Tab B, Martin Dep. at 56-57).

In January 2012, just a few weeks after taking over as RM, Gotshall called upon Plaintiff during off hours (Doc. 42, P. 9, ¶25). Plaintiff was in a church meeting at the time and relayed to RM Gotshall that he was a Pastor at the Assemblies of God church (*Id*.). Following this phone call, according to Plaintiff, RM Gotshall began to introduce Calame as "Pastor," and he would tell off colored jokes and religious stories in the workplace (*Id*. at ¶29-30). RM Gotshall also told Plaintiff that he is of the same religion, the Assemblies of God, but that he has had a bad experience with organized religion (*Id*. at ¶32). It is also at this time that written reprimands against Plaintiff began.

Specifically, on February 2, 2012, RM Gotshall first reprimanded Plaintiff for tardiness and failing to call him for the same, using the Aaron's employee counseling form (Doc. 36, p. 7 ¶18). Plaintiff acknowledged this written reprimand with his signature (*Id*.). RM Gotshall again issued a written reprimand on February 14, 2012, because Plaintiff left the store and did not notify him (Id. at ¶20). Plaintiff did not sign

or acknowledge this counseling form (*Id.*). On February 22, 2012, Plaintiff was written up a third time due to the negative productivity of his store (Doc. 37, Ex 3). The counseling form stated that when Plaintiff took over as GM his store had 746 customers, and the number had shrunk to 676 customers on February 22, 2012 (*Id.*). Again, this counseling form was not acknowledged by Plaintiff (*Id.*). Plaintiff's fourth and final write up came on March 5, 2012, where he was terminated from his employment for violating Aaron's bank deposit policy and failing to report a petty cash shortage at his store (Doc. 36, p. 9, ¶27). The termination meeting was short, and allegedly RM Gotshall told Plaintiff that his heart was in the church, not in Aaron's, and that he showed no commitment because he refused to work on Wednesdays (Doc. 42, p. 12, ¶44).

**Analysis**

Standard of Review

Summary Judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* Fed. R. Civ. P. 56(a)). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must establish that no genuine dispute exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "court may not assess the credibility of witnesses, choose between

competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

Discussion

Defendant contends that it is entitled to summary judgment because no genuine issue of material fact exists to support Plaintiff's allegation of religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. Under Title VII, it is unlawful for an employer to, *inter alia*, "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment" on the basis of religion. 42 U.S.C. § 2000 e-2 (a)(1). In a disparate treatment case, as in the instant matter, a Plaintiff may prove discrimination either directly or indirectly. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

*Direct Method*

"Under the direct method, the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Id*. (internal quotations omitted). "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v.*

*Kimberly-Clarke Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). However, "smoking gun evidence of discriminatory intent is hard to come by." *Donahoe*, 667 F.3d at 845 (internal quotations omitted); *see United States Postal Service Bd. of Governers v. Aikens*, 460 U.S. 711, 716 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes."). Circumstantial evidence "suggests discrimination albeit through a longer chain of inferences." *Zafar Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008). Pertinent to this case, circumstantial evidence can be established through "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Id*.

As direct evidence, Plaintiff points to statements made by RM Gotshall, including: (1) telling Plaintiff that though he was raised an Assemblies of God member, he had a bad experience with organized religion; (2) introducing Plaintiff as "Pastor" to other employees; (3) telling Bible stories and quoting the Bible at work around Plaintiff; and (4) telling Plaintiff his heart was at his church and not at Aaron's and that his refusal to work on Wednesdays showed he was not committed to Aaron's (Doc. 42, p. 16). Arriving at discriminatory intent from any of the above statements would necessarily require inference. "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes v. Ill. DOT.*, 359 F.3d 498, 504 (7th Cir. 2004). Though not appropriate examples of direct evidence, the statements taken in context represent circumstantial evidence of discrimination sufficient to defeat summary judgment.

Significantly, the record does not reflect that Plaintiff was reprimanded at any time before RM Gotshall discovered his religious affiliation. In fact, Plaintiff has asserted that RM Gotshall was satisfied with his work before learning he was a Pastor and even came to him for advice on some occasions (Doc. 42, Ex. 1, ¶29), and Defendant has not provided deposition or any other testimony from RM Gotshall to the contrary. Moreover, the record reflects that Plaintiff's first reprimand came subsequent to RM Gotshall's discovery of Plaintiff's religious affiliation. *Id*. at ¶39-41.

The timeline suggests at least a competing inference that Plaintiff's work performance was satisfactory leading up to RM Gotshall learning of Plaintiff's affiliation with his church. And, after Gotshall's discovery, the written reprimands started, some acknowledged by Plaintiff's signature and others not. There is enough circumstantial evidence in the record from Gotshall's behavior that a jury could find employment discrimination.

*Indirect Method*

The Supreme Court, following *McDonnell Douglas* and its progeny, has established a burden shifting analysis for indirectly proving discrimination. *Donahoe*, 667 F.3d at 845. Plaintiff initially carries the burden of establishing a *prima facie* case, demonstrating that: "(1) [He] is a member of a protected class, (2) [his] job performance met [Aaron's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class, was treated more favorably." *Id.*; *see McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

After setting forth a *prima facie* case, a presumption of discrimination takes hold and shifts the burden back to Defendant to supply a legitimate, non-discriminatory reason for its action. *Id*. If such a reason is articulated, the burden shifts once again back to Plaintiff to present evidence that the stated reason is pretextual, permitting an inference of discrimination. *Id*.

The parties do not dispute that Plaintiff is a Pastor and a member of the Assemblies of God church. It is also not disputed that he suffered an adverse employment action when his employment was terminated. At issue in this case is whether Plaintiff met Aaron's legitimate expectations and whether another similarly situated individual, not of his protected class, was treated more favorably.

To show that he was meeting Aaron's legitimate expectations, Plaintiff points to the fact that he was never reprimanded by an RM other than Gotshall, and the only reprimands from Gotshall came after Gotshall discovered his religious affiliation (Doc. 42, p. 19). According to Plaintiff, his performance at the Hazelwood location, though short, and those locations where he previously trained, was satisfactory (*Id*.). When he took over GM responsibilities at the East Alton location, there was an employee shortage, collections backlog, inadequate training, and consistent employee absenteeism (*Id*. at 20). Before finding out he was a Pastor, RM Gotshall was impressed with his performance at the East Alton location, such that Gotshall told Plaintiff he wanted to make him his Assistant Regional Manager (*Id*.). Taken as true, a reasonable jury could find the above facts satisfy the requirement that Plaintiff was meeting his employer's

legitimate expectations.

As to the fourth element, whether another similarly situated individual who was not in Plaintiff's protected class was treated more favorably, Plaintiff alleges that GM's Pinkerton and McVey were guilty of similar or worse transgressions and received favorable treatment (*Id.* at 21). GM McVey was guilty of unsatisfactory audits as well as repeated tardiness and absence violations (*Id.* at 13, 21). GM Pinkerton was also guilty of leaving work without calling RM Gotshall, and in his response to Gotshall's protest stated, "he didn't give a shit" (Doc. 42, p. 14). The Court notes that neither GM Pinkerton nor McVey were terminated (*Id.* at 21).

Defendant argues that GM's Pinkerton and McVey are not similarly situated because they did not commit the exact same infractions, and because they were disciplined at a date following Plaintiff's termination (Doc. 36, p. 16). Similarly situated individual analysis requires direct comparability to the plaintiff in all material respects. *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357 (7th Cir. 2009) (internal quotations omitted). However, they need not be perfectly identical every way. *Donahoe*, 667 F.3d at 846. "Whether a comparator is similarly situated is usually a question for the fact finder, and summary judgment is only appropriate where no reasonable fact finder could find that Plaintiff has not met his burden on the issue." *Id.* (quotations omitted). "[I]n the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish

their conduct or the employer's treatment of them." *Id.* at 847. Here, Plaintiff has alleged that GM Lea McVey and GM Matt Pinkerton, like himself, were both managed by RM Gotshall and were subject to the same standards. While there are competing inferences on the factual issue whether these individuals engaged in similar conduct, the Court finds that Plaintiff has met his burden on the issue.

Having found that Plaintiff could establish a *prima facie* case of discrimination, the burden shifts back to Defendant to elucidate a non-discriminatory reason for his termination. Defendant argues that Plaintiff was terminated due to multiple infractions and a dwindling customer base while he was GM over the East Alton Store (Doc. 36, p. 9). The record is uncontroverted to the fact that Plaintiff was late to work at least on February 2, 2012, and failed to call RM Gotshall (Doc. 42, p. 20). It is also uncontroverted that Plaintiff violated Aaron's bank deposit policy (Doc. 36, p. 14). That the customer base fell is not precisely disputed, though the ultimate results of the cause are disputed. Defendant has sufficiently articulated a non-discriminatory reason for terminating Plaintiff's employment.

But Plaintiff has submitted enough at this stage to suggest that Defendant's stated reasons for terminating his employment are pretextual. Specifically, Plaintiff denies having committed any of the infractions he was written up for outside of his acknowledged tardiness on February 2, 2012, and violating the bank deposit policy just prior to his termination (*Id.* at 20). Additionally, the fact that two other GM's under RM Gotshall were not terminated for similar behavior creates a genuine issue of material fact

on this issue.

## Conclusion

The Court finds that genuine issues of material fact preclude summary judgment in this case. For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. 35) is **DENIED**.

A final pretrial conference was previously scheduled for **Monday, September 29, 2014, at 1:30 p.m.** The case is now set for **JURY TRIAL** on **Tuesday, October 28, 2014, at 9 a.m.** Counsel should visit the Court's website at www.ilsd.uscourts.gov for instructions concerning procedures for the Final Pretrial Conference and trial.

IT IS SO ORDERED.

DATED:   July 29, 2014

> s/ *Nancy J. Rosenstengel*
> **NANCY J. ROSENSTENGEL**
> **United States District Judge**